Filed 11/8/21 In re Freeman CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re CLIFTON FREEMAN,<br><br>on Habeas Corpus. | H047829<br>(Santa Clara County<br>Super. Ct. No. 102114) |

In 1985, Clifton Freeman pleaded guilty in the Santa Clara County Superior Court to second degree murder (Pen. Code, § 187[1]). In 1986, the superior court sentenced Freeman to a prison term of 15 years to life.

In this appeal by the Warden of the California Medical Facility (Warden), we review whether the superior court properly granted Freeman habeas corpus relief from a 2018 decision by the Board of Parole Hearings (the Board) denying Freeman parole. The Warden contends, inter alia, that the court granted Freeman relief on a claim he never raised in his petitions for writ of habeas corpus, which contravenes controlling habeas corpus law. We agree and reverse the superior court's November 4, 2019 order granting Freeman relief without prejudice to Freeman filing a new, original petition for writ of habeas corpus challenging his continued incarceration.

---

[1] Unspecified statutory references are to the Penal Code.

# I. FACTS AND PROCEDURAL BACKGROUND

A. *Underlying Crime and Conviction*

Late one evening in June 1985, then 17-year-old Freeman killed a neighbor while she was in her yard. At the time, he resented her because she used to call him "Frank," instead of his correct name. In addition, shortly before the killing, Freeman had asked another neighbor to lend him an air pump to repair a bike tire. That neighbor refused and called Freeman a racial slur, which upset him. Feeling angry, Freeman hurled two rocks at the victim. The first rock missed her, so he threw another. The second rock struck her head and she fell to the ground on her driveway. Freeman went over to her and thought about "put[ting] [] water on her to bring her back . . . from being knocked out." But she "started breathing and [] making noise," so Freeman "thought she was all right." He left her and went home; he "was scared, paranoid." The victim's nine-year-old son discovered her and summoned help. The victim's head injury proved fatal; she died three days later.

Later in 1985, Freeman pleaded guilty to second degree murder. In 1986, the superior court sentenced Freeman to 15 years to life in prison.

B. *Habeas Corpus and Parole Board Proceedings*

In June 2016, the superior court denied a petition for writ of habeas corpus Freeman had filed challenging a February 2015 Board finding that he was unsuitable for parole.

In February 2017, Freeman, in propria persona, filed another petition for writ of habeas corpus. He claimed, relying principally on *In re Butler* (2015) 236 Cal.App.4th 1222 (which was subsequently reversed in *In re Butler* (2018) 4 Cal.5th 728), that the Board had improperly failed to calculate and set his "base term," his continued incarceration constitutes cruel and unusual punishment, the state had breached its plea agreement with him in violation of his rights to due process and was bound by the

agreement's terms, and the state had arbitrarily converted his sentence into a de facto sentence of life without the possibility of parole.

In April 2017, the superior court issued an order to show cause and appointed counsel to represent Freeman. The court described Freeman's petition as "arguing that his continued custody has become unconstitutionally disproportionate to his culpability and thus constitutes cruel and unusual punishment under the Eighth Amendment to the United States Constitution and article I, section 17, of the California Constitution."

In June 2017, the Attorney General filed a return asserting, inter alia, that Freeman waived his disproportionality claim when he pleaded guilty, his base term has no relevance to his maximum prison sentence, and his sentence has not become constitutionally excessive. In October 2017, Freeman responded by filing a combined denial and supplemental petition for writ of habeas corpus (first supplemental petition). In the supplemental petition, Freeman added a claim that challenged the Board's setting of his base term at 20 years and argued the Board should have used a base term matrix (i.e., regulatory criteria employed by the Board to assess a life prisoner's culpability for the commitment offense and the proportionality of the punishment imposed for that offense) formulated specifically for youth offenders.

In December 2017, the superior court issued an order stating that this claim Freeman sought to add by way of his first supplemental petition was "adequately raised in the original petition, [so] a separate order to show cause on it is unnecessary." In addition, the court ordered the Attorney General to provide "further briefing consisting of a calculation and explanation of [Freeman]'s base and adjusted base term, i.e., matrix and credits, and all supporting materials," because that information was relevant to Freeman's "disproportionate punishment claim."

On January 30, 2018, the Board afforded Freeman his "Eighth Subsequent Parole Suitability Hearing" and again denied him parole. In making its decision, the Board "gave great weight to the youthful offender factors because [Freeman] was 17 when he

3

committed the Life Crime." The Board recognized that "the brain is not fully developed" in a 17 year old, "so he's [] less culpable . . . than an adult who [] may have committed a similar act [at a] later stage in life. [Freeman] also demonstrated some of the hallmark features of youth, [] including impulsivity, [] recklessness, a lack of empathy, lack of concern, [and] lack of care [] for anyone other than himself at the time." The Board observed, "the issue here is one of growth and maturation. [A]lthough . . . [Freeman] has grown [] while in prison, . . . he takes a couple steps forward and then another step back, and that was the issue for today."

The Board noted Freeman, who was 50 years old at the time of the hearing, had "gotten recent 115s" (i.e., prison rule violations). The violations involved Freeman twice fondling his genitals in the presence of female prison recreation therapists. In the Board's view, Freeman's behavior during these two incidents "displays some real impulsivity, [and] a lack of behavioral control," and "the victims were all kind of . . . unsuspecting female victims, [] much like that of . . . the Life Crime. So that's the common thread there." The Board found that Freeman's responses to questions they had asked him about the violations "just don't add up." In addition, Freeman had recently received a "counseling chrono" (Form CDC 128–A) for disrespecting a prison staff member and acting in an angry and disruptive manner, which was "inappropriate" and showed "lack of control" and "some anger," like Freeman "did in the Life Crime." The Board observed that Freeman "still [had] some work to do in terms of learning to manage [his] behavior" and a "need for [] further maturation and growth in some areas." This was the Board's "primary concern."

In addition, the Board considered the gravity of Freeman's crime, characterizing it as "horrific" and having "significant impacts." The Board further noted "some instability" in Freeman's "relationships within [his] family" and "the domestic violence . . . within the family environment." The Board "also found that [Freeman] had a history of serious [] mental illness and, [] those issues [] are better managed today than they were

4

perhaps at the time . . . of the crime. . . . [A]nd that's a good thing, so there's progress there." The Board acknowledged that "the California Supreme Court has ruled that after a long period of time, those static factors -- like the crime, any instability in your family or relationship history, [] any history of serious mental problems -- [] may be [] factors that no longer indicate that [Freeman is] still a threat to the public today when [he has] engaged in a long period of rehabilitation. And there's been a real change to [his] past and present mental state."

The Board noted that Freeman had "done a lot of positive things" in prison, including participating in "some very healthy groups," but said "there's still some room for growth" and "focus on the impulse control, healthy relationships, [and] impulsivity." The Board suggested Freeman talk with his "clinician" about how to manage his behavior, noting that he is "in treatment" and "medication compliant." In addition, the Board mentioned an October 2017 psychological report which indicated that Freeman "had a risk to reoffend in [] a sexual way" based on his "recent conduct in prison."

"[A]fter weighing all of the relevant, reliable information available," the Board "concluded that Mr. Freeman currently poses an unreasonable risk of danger to society or a threat to public safety." The Board deferred Freeman's next parole hearing for three years. It also noted that Freeman's file would be administratively reviewed in about a year and, if Freeman refrained from additional misconduct, there was a possibility his next parole hearing would be convened in approximately 18 months.

In February 2018, the Attorney General filed a supplemental brief pursuant to the superior court's December 2017 order requesting further briefing. The Attorney General asserted that Freeman "is not serving an unconstitutionally excessive sentence. And his 20-year base term is irrelevant to his constitutional disproportionality claim." Freeman responded by filing two supplemental briefs in April 2018, arguing that his continued custody had become unconstitutionally disproportionate to his culpability and constitutes cruel and unusual punishment.

5

In July 2018, after the California Supreme Court had overruled *Butler*, the superior court invited Freeman to file a supplemental habeas corpus petition on "the *Montgomery* issue" (see *Montgomery v. Louisiana* (2016) 577 U.S. 190 (*Montgomery*)) and "whether Freeman has again been denied parole based on his history of mental health issues."[2] Further, the court suggested that Freeman "brief the question of remedies" in his supplemental petition, noting "[o]ne [possible remedy] is to remand this matter to the Board with directions to consider the *Montgomery* question and precluding them from denying parole based on California Code of Regulations, title 15, § 2402 (c), alone,"[3] and a "second possible remedy is determining whether Freeman's incarceration has already reached the point of being an Eighth Amendment violation and ordering his immediate release."

In March 2019, Freeman filed his second supplemental petition for writ of habeas corpus (petition) and incorporated by reference his February 2017 petition for writ of habeas corpus, October 2017 denial, and April 2018 "supplemental denials." In the petition, Freeman alleged that he suffers from intellectual disabilities and mental health

---

[2] In *Montgomery*, the United States Supreme Court clarified that *Miller v. Alabama* (2012) 567 U.S. 460 "announced a substantive rather than a procedural rule, and therefore operates retroactively. [Citation.] *Montgomery* explained that '*Miller* . . . did more than require a sentencer to consider a juvenile offender's youth before imposing life without parole; it established that the penological justifications for life without parole collapse in light of "the distinctive attributes of youth." [Citation.] Even if a court considers a child's age before sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects " 'unfortunate yet transient immaturity.' " [Citation.] Because *Miller* determined that sentencing a child to life without parole is excessive for all but " 'the rare juvenile offender whose crime reflects irreparable corruption,' " [citation], it rendered life without parole an unconstitutional penalty for "a class of defendants because of their status"— that is, juvenile offenders whose crimes reflect the transient immaturity of youth.' " (*In re Kirchner* (2017) 2 Cal.5th 1040, 1048; see also *id.* at p. 1042.)

[3] Title 15, section 2402, subdivision (c), of the California Code of Regulations sets forth "circumstances [that] tend to indicate unsuitability for release." (Regs. tit. 15, § 2402, subd. (c).)

issues. He claimed that (1) given the nature of his offense and his age, intellectual disabilities, and mental illness, his sentence has become unconstitutionally disproportionate to his culpability and violative of state and federal protections against cruel and/or unusual punishment, and (2) his prison confinement violates due process because it has failed to address his mental health and intellectual disabilities in a manner that renders him suitable for parole release.

Freeman's first claim was based solely on principles of disproportionate punishment under California law and the Eighth Amendment to the United States Constitution. Specifically, he argued, inter alia, that there is no evidence that he is incorrigible, and "[t]he constitutional limits of [him] being incarcerated for the offense he committed when he was 17 years old have passed. It is unconstitutional to keep this juvenile offender incarcerated due to concerns related to his mental health, or impulse control issues that result from his intellectual disabilities. Denial on these grounds is de facto sentence of life without the possibility of parole, regardless of how many perfunctory parole hearings are law [*sic*]. The law provides for other avenues to address potential societal concerns regarding petitioner's mental health and/or intellectual limitations, indefinite incarceration is unconstitutional and not the proper avenue." Freeman asserted further that "he should be immediately ordered released."

Regarding his second claim, Freeman argued that he "is in the wrong place" and should be "house[d] in a state hospital[] or a developmental center where he can receive the treatment and accommodations that he needs to be found suitable for parole." Freeman asked the superior court to order that he be "transferred to a facility and program that can accommodate and treat his . . . intellectual disabilities and mental health issues." Freeman's second claim, which was based in part on due process, did not challenge the length of his sentence or the Board's conduct at his parole hearing.

7

In April 2019, the superior court filed an order to show cause "based on Mr. Freeman's habeas corpus petition of March 14, 2019." The order directed the Warden to file a return.

The Attorney General filed a return to the order to show cause in June 2019. The Attorney General asserted that (1) Freeman failed to establish that his 34 years in prison for murder is an unconstitutionally disproportionate punishment under state law, (2) he failed to prove his prison sentence violates the Eighth Amendment, (3) his due process claim regarding the quality of his care in prison should be dismissed because of procedural deficiencies, and (4) even if Freeman's due process claim were to be substantively considered, it should be denied as lacking merit. In addition, the Attorney General asserted various procedural bars to the claims in Freeman's petition and mentioned that, "after the Board denied parole in January 2018, Freeman committed three additional serious rule violations—two of which were sexual in nature—in February, April, and July of 2018."

In July 2019, Freeman filed a denial.

On November 4, 2019, the superior court filed an order granting Freeman's petition. Citing *Montgomery*, the court stated "[t]he issues raised by the instant petition are rooted in the United States Supreme Court's rule 'that a lifetime in prison is a disproportionate sentence for all but the rarest of children, those whose crimes reflect " 'irreparable corruption.' " ' " The court quoted, at length, the California Supreme Court's decision in *People v. Franklin* (2016) 63 Cal.4th 261 and explained that certain concerns about the application of section 3051 (governing youth offender parole hearings) which were recognized but not directly addressed by our high court in *Franklin* "are ripe in this case."

The superior court stated that, despite "stringent requirements" "that children are different from adults" and " 'hope for some years of life outside prison walls must be restored' " unless the "youth offender's crime reflects 'irreparable corruption,' " "the

8

Board again cited [Freeman]'s 'history of serious mental illness,' invoked his unstable social history, and identified the motive for [Freeman]'s crime as alternatively inexplicable or very trivial." The court observed that, "while the Board's reasoning may pass muster under the highly deferential 'some evidence' test used by the courts to review parole denials for adults [citations], [Freeman] is not an adult offender." Rather, Freeman's continuing, 34-year incarceration "is constitutionally permissible only if his 'crime reflects irreparable corruption resulting in permanent incorrigibility.' [Citation.] Presently, such a finding has not been made, nor is there any evidence of this." The court opined that Freeman's "parole hearings have not been meaningful opportunities for release insofar as the *Montgomery* and *Miller* [decisions] are concerned. Without a more specific, reviewable record wherein careful consideration and great weight are given to youth factors, or a finding by the Board that [Freeman] is permanently incorrigible, [Freeman]'s hearings will continue to be so." The court explained that the "Board seems to have focused heavily on the question of [Freeman]'s growth and increased maturity" and criticized the Board's "rationale" that Freeman " 'still [had] some room for growth,' " because "this cannot be the standard when only permanent incorrigibility truly justifies imprisoning a youth offender for life without parole."

Further, the superior court noted that Freeman is "is intellectually disabled and is functioning at the level of a 12 year-old," which explains his inability "to articulate his insight to the Board's satisfaction or to demonstrate 'credibility' in their eyes," and "explains the poor impulse control that has led to disciplinary issues." To the court, it "appear[ed] that [Freeman] is no longer being punished for the crime he committed as a juvenile; he is instead being punished for his youth offender characteristics. As such, his continued incarceration raises the specter of cruel and unusual punishment."

The superior court concluded that "Freeman's most recent parole hearing [(i.e., the January 2018 hearing)] did not comport with due process as required by case law of the United States Supreme Court, the California Supreme Court, and by California Penal

9

Code section 3051, subdivision (e). [Freeman] is a youth offender and therefore entitled to release absent either 1) a finding that he is permanently incorrigible or 2) a specific, reviewable record whereupon the gravity of the convicted offense truly outweighs the diminished culpability of youth, the hallmark features of youth, and the growth and increased maturity of [Freeman] after careful consideration and great weight given to such youth factors. The Board's decision here does not reflect the appropriate application of the correct standard for release, nor a considered analysis of the dispositive questions surrounding [Freeman]'s suitability for release. Accordingly, the Board is ordered to conduct a new hearing." (Fn. omitted.) The superior court vacated the Board's parole denial and said that "[u]nless there is substantial new and different evidence presented" at "another hearing comporting with due process," Freeman "must be granted parole."

The Attorney General timely appealed the superior court's November 4, 2019 order. Additionally, on February 13, 2020, the Attorney General filed a petition for writ of supersedeas requesting a stay of the superior court's order. On April 29, 2020, this court granted the petition for writ of supersedeas to stay, pending this appeal, the superior court's November 4, 2019 order.

## II. DISCUSSION

The Attorney General contends the superior court erred in three ways when it granted Freeman habeas corpus relief: (1) "the court granted relief on an unraised claim in contravention of habeas jurisprudence;" (2) "even if the superior court could consider an unraised claim, the court violated *In re Shaputis II* (2011) 53 Cal.4th 192, 220-221 (*Shaputis II*) by applying the wrong standard of judicial review and misconstruing the Board's core function to assess inmates' current dangerousness;" and (3) even assuming the superior court properly concluded that Freeman should be given a new parole hearing, "the court ordered relief contrary to *In re Prather* (2010) 50 Cal.4th 238 [] by ordering Freeman a new parole consideration hearing where the Board must alter its public-safety inquiry."

10

Freeman counters that "the superior court decision is based on a finding the continued incarceration of a youthful offender with significant mental health issues violates the Eighth Amendment when the reasons for denying parole are inherently connected to Freeman's youthful offender status and his mental health issues." He maintains that his continued incarceration has become unconstitutionally disproportionate to his culpability and violates state and federal constitutional prohibitions against cruel and unusual punishment. He asserts further that the superior court "properly considered" his claim that "his sentence was cruel and unusual despite the Board's finding [he] presented a current danger to public safety" (bolding and some capitalization omitted). Freeman concludes by asserting that he "should be ordered released on parole."

The Attorney General replies that Freeman failed to address any of the arguments raised in appellant's opening brief. According to the Attorney General, Freeman, instead "attempts to revive the claim he averred below by arguing he should be released from prison immediately because his sentence has become constitutionally excessive. . . . But . . . the superior court neither adjudicated this issue in the first instance nor ordered [Freeman's] immediate release from prison."

A. *Standard of Review and Relevant Legal Principles*

"When a superior court grants relief on a petition for habeas corpus without an evidentiary hearing, as happened here, the question presented on appeal is a question of law, which the appellate court reviews de novo. [Citation.] A reviewing court independently reviews the record if the trial court grants relief on a petition for writ of habeas corpus challenging a denial of parole based solely upon documentary evidence." (*In re Lazor* (2009) 172 Cal.App.4th 1185, 1192.)

Regarding parole suitability hearings, " ' "Section 3041 mandates that the Board ' " 'normally' " ' set a parole date for an eligible inmate, and ' "must" ' do so unless it determines that an inmate poses a current threat to public safety. [Citation.] [Fn. omitted.] As a result, parole applicants have 'a due process liberty interest in parole'

11

and ' "an expectation that they will be granted parole unless the Board finds, in the exercise of its discretion, that they are unsuitable for parole in light of the circumstances specified by statute and by regulation." ' " ' " (*In re Shelton* (2020) 53 Cal.App.5th 650, 662–663 (*Shelton*).) Pursuant to section 4801, subdivision (c), "[w]hen a prisoner committed his or her controlling offense . . . when he or she was 25 years of age or younger, the board, in reviewing a prisoner's suitability for parole pursuant to Section 3041.5, shall give great weight to the diminished culpability of youth as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner in accordance with relevant case law." (§ 4801, subd. (c).)

A court " ' " 'review[s] the Board's decision under a "highly deferential 'some evidence' standard." ' " ' " (*Shelton*, *supra*, 53 Cal.App.5th at p. 663; see also *Shaputis II*, *supra*, 53 Cal.4th at p. 221.) The court " 'must uphold the decision of the Board . . . "unless it is arbitrary or procedurally flawed," and it "reviews the entire record to determine whether a modicum of evidence supports the parole suitability decision." [Citation.] "The reviewing court does not ask whether the inmate is currently dangerous. . . . Rather, the court considers whether there is a rational nexus between the evidence and the ultimate determination of current dangerousness. The court is not empowered to reweigh the evidence." [Citation.] At the same time . . . the Board's decision must " 'reflect[] due consideration of the specified factors as applied to the individual prisoner in accordance with applicable legal standards.' " [Citations.]' [Citation.] [A court is] required to affirm a denial of parole 'unless the Board decision does not reflect due consideration of all relevant statutory and regulatory factors or is not supported by a modicum of evidence in the record rationally indicative of current dangerousness, not mere guesswork.' " (*Shelton*, at p. 663.)

Furthermore, in *In re Palmer* (2021) 10 Cal.5th 959 (*Palmer*), the California Supreme Court concluded that "the Board's denial of parole does not prevent inmates serving indeterminate terms . . . from challenging [(via habeas corpus petition)] their

12

continued incarceration as cruel or unusual under the California Constitution." (*Id.* at p. 968.) The court explained: "It remains the judiciary's responsibility to decide whether a prison term has become excessive, and a court properly respects the Legislature's prerogative not by performing some ritualistic deference, but by analyzing the challenged punishment under the traditional, lenient legal standard" set forth in *In re Foss* (1974) 10 Cal.3d 910 and *In re Lynch* (1972) 8 Cal.3d 410.[4] (*Palmer*, at p. 971.) Accordingly, our high court concluded that "[i]f a court [] finds the inmate's continued confinement has become excessive, it may order the inmate's release from prison." (*Id.* at p. 980.) But "such release does not guarantee [] automatic termination of the inmate's statutory parole period" because, under our state's statutory scheme, parole is "a distinct phase of punishment" which "remains valid" unless it "separately or in combination with [the inmate's] years of imprisonment [has] become constitutionally excessive." (*Ibid.*)

Regarding the procedures governing habeas corpus petitions, " '[w]hen presented with a petition for writ of habeas corpus, a court must first determine whether the petition states a prima facie case for relief—that is, whether it states facts that, if true, entitle the petitioner to relief—and also whether the stated claims are for any reason procedurally barred.' " (*Board of Prison Terms v. Superior Court* (2005) 130 Cal.App.4th 1212, 1233 (*Board of Prison Terms*).) " 'If the court determines that the petition does not state a prima facie case for relief or that the claims are all procedurally barred, the court will deny the petition outright, such dispositions being commonly referred to as "summary denials." [Citation.]' [Citation.] 'When, on the other hand, a habeas corpus petition is sufficient on its face (that is, the petition states a prima facie case on a claim that is not

---

[4] The "three analytical techniques to aid [a court's] deferential review of excessiveness claims [are]: (1) an examination of the nature of the offense and the offender, with particular attention to the degree of danger both pose to society; (2) a comparison of the punishment with the punishment California imposes for more serious offenses; and (3) a comparison of the punishment with that prescribed in other jurisdictions for the same offense." (*Palmer*, *supra*, 10 Cal.5th at p. 973.)

procedurally barred), the court is obligated by statute to issue a writ of habeas corpus.' " (*Id*. at p. 1234.) Alternatively, the court can issue an order to show cause in lieu of the writ of habeas corpus. (*Ibid*.)

The order to show cause signifies a preliminary determination that the petitioner has made a prima facie showing of entitlement to relief and "also directs the respondent to address the 'claims raised in the petition and the factual bases for those claims alleged in the petition.' " (*Board of Prison Terms*, *supra*, 130 Cal.App.4th at p. 1234; see also *People v. Duvall* (1995) 9 Cal.4th 464, 475 (*Duvall*).) "After the return is filed, the petitioner replies in a pleading called a traverse [or denial (see Cal. Rules of Court, rule 4.551(e))], in which the petitioner must indicate whether the factual allegations in the return are admitted or disputed." (*Board of Prison Terms*, at p. 1235.) "Thus, it is the parties' pleadings that define the issues." (*Ibid*.) "To bring additional claims before the court, petitioner must obtain leave to file a supplemental petition for writ of habeas corpus." (*Ibid*.)

The superior court does not have the authority to address claims not raised in a habeas corpus petition. "Section 1484 does not specifically provide the superior court with the power to ensure that all claims that could be raised regarding the legality of petitioner's detention have been raised, or to supplement the petition with new claims by way of the order to show cause." (*Board of Prison Terms*, *supra*, 130 Cal.App.4th at p. 1236.) "Only those claims raised in the original habeas corpus petition or in a supplemental habeas corpus petition may be considered by the court." (*Id*. at p. 1237; see also *In re Lugo* (2008) 164 Cal.App.4th 1522, 1542–1543 (*Lugo*); *Duvall*, *supra*, 9 Cal.4th at p. 478.)

B. *Analysis*

We agree with the Attorney General that, here, the superior court improperly granted Freeman relief on a claim that he did not raise in his petitions for writ of habeas corpus.

In his February 2017 petition, Freeman claimed that the Board had improperly failed to calculate and set his base term, his continued incarceration constitutes cruel and unusual punishment, the state had breached its plea agreement with him and was bound by its terms, and the state had arbitrarily converted his sentence into a de facto sentence of life without the possibility of parole. Additionally, in October 2017, Freeman filed a combined denial and supplemental petition that further claimed youth offenders should have a different "base term" matrix than adult offenders. In December 2017, the superior court ruled that Freeman's alleged supplemental claim regarding the "base term" was subsumed in the claims he had raised previously in his February 2017 petition.

More than a year later, in July 2018, the superior court invited Freeman to file a supplemental petition for writ of habeas corpus addressing *Montgomery*, *supra*, 577 U.S. 190, and the Board's January 2018 denial of parole. In turn, Freeman filed his second supplemental habeas corpus petition in March 2019. In that petition, Freeman alleged that he suffers intellectual disabilities and mental illness and specifically raised two claims. In the first claim, Freeman asserted that, given the nature of his crime and his personal characteristics, his sentence had become unconstitutionally disproportionate and violative of constitutional prohibitions against cruel and/or unusual punishment. In his second claim, Freeman asserted that he was being denied his constitutional rights to due process by the state's failure to give him "a suitable opportunity to make the life changes necessary to be considered suitable for parole" (bolding and capitalization omitted). Freeman consequently asked the superior court to "[g]rant the petition and make a finding that petitioner's continued incarceration is unconstitutional" and "[o]rder petitioner transferred to a facility and program that can accommodate and treat his . . . intellectual disabilities and mental health issues."

As detailed previously, on November 4, 2019, the superior court vacated the Board's January 2018 denial of parole on due process grounds—not the Eighth Amendment and corresponding state constitutional claims Freeman had raised in his own

15

petitions or his due process claim alleging a failure of state officials to address his mental health and intellectual disabilities. The court's order asserted Freeman's parole hearing "did not comport with due process as required by case law . . . and by California Penal Code section 3051, subdivision (e)."[5] Relying in large part on *Montgomery*, *Miller*, and *Franklin*, the superior court reasoned that "because the record does not establish that [Freeman] is one of these 'rarest of children' " " 'whose crimes reflect permanent incorrigibility' " and "lacks meaningful support for the assertion that the Board gave 'great weight' to 'the diminished culpability of youth' and 'the hallmark features of youth . . . in accordance with relevant case law,' the parole denial violated due process." Although the court alluded to Freeman's "continued incarceration" as "rais[ing] the specter of cruel and unusual punishment," it manifestly found that the Board's January 2018 parole denial ran afoul of Freeman's rights to due process, rather than the protections afforded him by the Eighth Amendment and article I, section 17 of the California Constitution. In accord with that conclusion, the court directed that Freeman "be provided another hearing comporting with due process," not that he be released from prison, the remedy Freeman had requested for his constitutional disproportionality claim.

Freeman did not expressly or implicitly assert a claim in superior court that resembles the grounds relied on by the superior court to grant relief in this case. Freeman alleged a "due process" claim regarding the state's purported denial of " 'a fair

---

[5] Section 3051, subdivision (e), provides: "The youth offender parole hearing to consider release shall provide for a meaningful opportunity to obtain release. The board shall review and, as necessary, revise existing regulations and adopt new regulations regarding determinations of suitability made pursuant to this section, subdivision (c) of Section 4801, and other related topics, consistent with relevant case law, in order to provide that meaningful opportunity for release." (§ 3051, subd. (e); cf. *In re Brownlee* (2020) 50 Cal.App.5th 720, 726 [concluding that the prisoner "is not entitled to a youth offender parole hearing because he is already eligible for parole. (§ 3051, subd. (a)(1)(C).) Nonetheless, the Board of Parole Hearings shall apply 'the diminished culpability of youth as compared to adults' criteria at his next [and all future] parole hearing. [Fn. omitted.] (§ 4801, subd. (c).)"])

16

opportunity to make the life changes necessary to be considered suitable for parole in the future' " and, thus, asked to be transferred for appropriate treatment. In his petitions he did not challenge on due process grounds the January 2018 parole hearing procedures or finding that he was unsuitable for parole. On this record, we conclude the superior court granted Freeman habeas corpus relief on a claim that he did not raise. Because the superior court did not have this authority, we must reverse its November 4, 2019 order. (See *Lugo*, *supra*, 164 Cal.App.4th at pp. 1542–1543; *Board of Prison Terms*, *supra*, 130 Cal.App.4th at pp. 1234–1235, 1237.)

Given our conclusion that the superior court erred, we need not address the Attorney General's alternative arguments for reversal. Nevertheless, we must decide the appropriate remedy. In his brief, the Attorney General urges us to "reverse the superior court's order" and "direct the superior court to deny Freeman's habeas petitions." However, the Attorney General does not offer any specific argument for why we should make such an order, and the superior court's November 4, 2019 order did not delineate or explicitly state whether it had denied any or all claims for which it seemingly granted an order to show cause.

Because there is uncertainty in the record regarding the superior court's treatment of Freeman's stated claims, including that his punishment has become unlawfully disproportionate, we will direct that our reversal of the superior court's grant of habeas corpus relief is without prejudice to Freeman filing a new, original petition for writ of habeas corpus challenging his continued incarceration under his current circumstances.[6]

---

[6] We note that Freeman asserts in his briefing that "[h]e should be ordered released on parole" because the "term [he] has now served is disproportionate to his individual culpability given his youth and mental disabilities." However, here, we decide only the Warden's appeal from the superior court's order granting Freeman habeas corpus relief and reverse that order for the reasons stated. We do not consider in this appeal the merits of Freeman's disproportionality claim. Further, we are not addressing an original habeas corpus proceeding initiated by Freeman in this court. (See § 1507; see also *Robinson v.*

17

## III. DISPOSITION

The superior court's November 4, 2019 order is reversed without prejudice to Freeman filing a new, original petition for writ of habeas corpus challenging his continued incarceration.

---

*Lewis* (2020) 9 Cal.5th 883, 895–896.) We express no opinion as to how the superior court should decide any habeas claim regarding Freeman's continued incarceration.

_____
               Danner, J.

WE CONCUR:

_____
Elia, Acting P.J.

_____
Grover, J.

**H047829**
*In re Freeman on Habeas Corpus*