**Arthur MARTINEZ, Petitioner,**

**v.**

**John MARSHALL, Warden, Respondent.**

**Case No. CV 06–7131–DDP (RC).**

United States District Court, C.D. California.

May 11, 2010.

Order Denying Reconsideration June 18, 2010.

Arthur Martinez, Stanton, CA, pro se.

Lora Fox Martin, CAAG Office of Attorney General of California, San Diego, CA, for Respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

DEAN D. PREGERSON, District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the petition and other papers along with the attached Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, as well as respondent's Objections, and has made a *de novo* determination.

IT IS ORDERED that (1) the Report and Recommendation is approved and adopted; (2) the Report and Recommendation is adopted as the findings of fact and conclusions of law herein; (3) the Court determines petitioner was denied due process of law when the Governor reversed the Board's 2004 grant of parole to him without "some evidence" in the record; (4) the Court determines the California Supreme Court's decision determining the Governor's reversal of petitioner's 2004 grant of parole did not deny petitioner due process of law was an unreasonable application of federal law, and Judgment shall be entered granting the petition for writ of habeas corpus; and (5) the Board's 2004 grant of parole to petitioner is reinstated, the California Department of Corrections and Rehabilitation shall credit the time petitioner was incarcerated beyond his 2004 release date towards petitioner's parole period, and Judgment shall be entered accordingly.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judgment's Report and Recommendation and Judgment by the United State mail on petitioner.

## REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE

ROSALYN M. CHAPMAN, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Dean D. Pregerson, United States District Judge, by Magistrate Judge Rosalyn M. Chapman, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05–07 of the United States District Court for the Central District of California.

## BACKGROUND

### I

On January 17, 1984, in Los Angeles County Superior Court case no. A371885, pursuant to a plea bargain, petitioner Arthur Martinez pleaded guilty to, and was convicted of, one count of second degree murder in violation of California Penal Code ("P.C.") § 187 (count 6), and petitioner was sentenced to 15 years to life in state prison. Lodgment nos. 1, 11.[1]

### II

On June 24, 2004, petitioner had a parole suitability hearing before a panel of the California Board of Prison Terms ("Board"),[2] at which time the Board found him "suitable for parole" on certain terms and conditions, effective October 22, 2004.[3] Lodgment no. 3. These terms included precluding petitioner from using or possessing alcoholic beverages and requiring petitioner to submit to alcohol and drug testing,

1. The facts and circumstances underlying petitioner's conviction are set forth in a probation officer's report for the sentencing hearing, as follows:

This case involves two separate incidents on the same date. The first incident occurred on September 19, 1981 in the early morning hours just after midnight. The second incident occurred approximately 22 hours later at 10:30 p.m. on the same date of September 19, 1981.[¶] The first incident, which involved a robbery and a double homicide occurred on the sidewalk in front of 1527 West Fourth Street in the city and county of Los Angeles. The second incident occurred in the street in front of 328 South Columbia Street, Los Angeles. [¶] The first incident arose when the [petitioner], accompanied by Eloy Perez and Ernie Marmol (all Magician gang members) were observed by witness Leo Martinez to be tampering with a vehicle. The vehicle's owner Emiliano Umana moved the car. The [petitioner] and his fellow gang members then confronted witness Martinez about someone moving the car that they were attempting to either break into or steal. Perez brought a sawed-off .22 caliber rifle; Marmol supplied to [petitioner] a shotgun. An inquiry as to who had moved the car was made and upon gaining no information, the [petitioner], Perez and Marmol demanded money from witness Martinez, Emiliano Umana and Carlos Leon. Martinez handed over some change whereupon the [petitioner] and Perez started shooting. Both victims Emiliano Umana (also known as Aldana), age 37, and Carlos Leon, age 29, were killed by rifle fire. After the shooting, [petitioner], Perez, and Marmol fled the scene. [¶] The second incident occurred when [petitioner, Perez and Marmol] approached victim Ruben Rivas and demanded beer. [Petitioner, Perez and Marmol] took beer without invitation whereupon a fight erupted. [Petitioner, Perez and Marmol] beat victim Rivas with fists and beer bottles. They then left the scene and Perez returned with a rifle and shot the victim Rivas twice in the back of each leg as Rivas was fleeing the scene. None of the victims or witnesses are known gang members.

Lodgment no. 2 at 2–3.

2. The California Board of Prison Terms was abolished effective July 1, 2005, and replaced with the California Board of Parole Hearings. P.C. § 5075(a).

3. The Board's parole decision did not become effective for 120 days, P.C. § 3041(b), and, as discussed further below, it would not be final for 30 days thereafter, which allows time for the Governor's review. Cal. Const. Art. V, § 8(b).

participate in a substance abuse program, report to an outpatient clinic for evaluation, and not actively participate in, promote or assist any prison gang, disruptive group or criminal street gang activity or violate any gang abatement order or injunction. *Id.* In finding petitioner suitable for parole, the Board calculated petitioner's base term as 216 months imprisonment, reduced to 144 months due to post-conviction sentencing credits. *Id.* On November 9, 2004, Governor Arnold Schwarzenegger reversed the Board's grant of parole,[4] stating:

> At the time of the murder, [petitioner] was 18 years old and on probation due to an earlier adjudication as a juvenile for grand-theft person. He told the Board at his 2004 parole hearing that the offense occurred when he and some friends attacked a man walking on a street and demanded money from him. [Petitioner] also said at his hearing that he was first arrested at age 7, for throwing rocks at a car, and thereafter for possession of a deadly weapon with the intent to commit an assault and unlawfully taking a vehicle.
>
> He described to the Board at the same hearing that he was at the time of the murders part of "a club with a gang-like mentality." [¶] Since entering prison, [petitioner] has been disciplined three times for serious-rules violations-including once for a stabbing assault on another inmate and once for possession of an inmate-manufactured weapon-and counseled twice for minor misconduct. He

also was associated with a gang while in prison, as he told the Board at his 2004 hearing. [¶] But [petitioner] seemed to turn a corner during the mid–1980s. Based on the record before me, he has been gang-free since his debriefing in the mid–1980s and has remained discipline-free since 1986. Likewise, he has worked while in prison to enhance his ability to function within the law upon release. He obtained his GED, has taken FEMA classes, and has received vocational training in upholstery, office services, and dry cleaning. He has held several skilled institutional jobs such as his current position as the recreation coordinator for mentally-ill inmates. He has participated in an array of self-help and therapy, including various substance-abuse programs since 1989, Personal Growth Seminars, Criminal and Gang Members Anonymous, Process Group, Lifer Prisoner's Support Group, Alternatives to Violence, Stress Intervention Peer Program, Anger Management, Criminon, and IMPACT. He has been involved in the hospice-care program and has volunteered as an HIV Peer Educator and a literacy tutor. He has maintained relationships while in prison, been commended by various prison staff, and has received positive Life Prisoner and mental-health evaluations. He also has made realistic parole plans for himself that include confirmed offers of housing and employment. These are all factors supportive of [peti-

---

4. In 2007 and again in 2008, the Board also granted petitioner parole. Notice of Motion for Judicial Notice (filed October 21, 2008), Att. A; Motion to Dismiss at 2 & Exh. 1, and Governor Schwarzenegger again reversed the Board's parole grants. Motion to Dismiss at 2 & Exh. 1; Respondent's Status Report, Exh. A. However, on July 23, 2009, the Los Angeles County Superior Court granted petitioner's habeas corpus petition challenging the Governor's 2007 reversal of petitioner's grant of

parole, and petitioner was released on parole on September 1, 2009, with a tentative parole discharge date of September 1, 2014. Motion to Dismiss at 2 & Exh. 1. The respondent has appealed the Superior Court's decision to the California Court of Appeal, where the appeal is pending. *See In re Martinez,* California Court of Appeal case no. B218182. The Court discusses in Part V below, whether petitioner's release on parole makes this action moot.

tioner's] release from prison to parole. [¶] Nevertheless, [petitioner's] conduct went beyond the minimum necessary to sustain a single second-degree murder conviction because he participated in an armed robbery during which two men were shot and killed. As described by [petitioner] at the 2004 parole hearing, he and his partners felt "disrespected" because they were asked to get off of Mr. Umana's car. As a result, they went home to retrieve weapons, returned, and demanded money from Mr. Umana, Mr. Leon, and two other men who were present. According to a preliminary investigation report by the Los Angeles Police Department, one of the crime partners said, "If you want to live[,] give us your money." [Petitioner] fired the shotgun into the air, and a crime partner shot Mr. Umana and Mr. Leon in their heads, killing both men. In addition to the motive for the murders being exceedingly trivial, [petitioner's] conduct after the murders demonstrated an exceptional callousness and a complete lack of remorse and conscience. According to [petitioner], he went home to sleep after the slayings of Mr. Umana and Mr. Leon. And later, he met up with his crime partners and continued the crime spree, ultimately demanding beer from and then beating Mr. Rivas. The magnitude alone of [petitioner's] murderous conduct is a sufficient basis for me to conclude that his release from prison at this time would pose an unreasonable public-safety risk. The Los Angeles County District Attorney's Office apparently agrees. A representative from that office opposed [petitioner's] parole at the 2004 hearing based on, among other factors, the gravity of the crime he committed. [¶] [Petitioner] says he is now remorseful and accepts responsibility for the murders of Mr. Umana and Mr. Leon. Yet at his 2004 hearing, he told the Board that he "wasn't present" when his partners demanded money because he followed behind them approximately 20 to 25 feet. A Commissioner at the 2004 hearing said, "I find it difficult to believe that at the crime scene you didn't know it was a robbery...." I agree. [¶] After carefully considering the very same factors that the Board must consider, I believe [petitioner] would pose an unreasonable risk of danger to society if released from prison at this time. Accordingly, I REVERSE the Board of Prison Terms' June 2004 decision to grant parole to [petitioner].

Lodgment no. 4.

On August 25, 2005, petitioner filed a habeas corpus application in the Los Angeles County Superior Court, Lodgment no. 5, which denied the petition on September 9, 2005, stating:

[T]he Court concludes that the record contains "some evidence" to support the Governor's finding that petitioner is unsuitable for parole. (*In re Rosenkrantz* (2002) 29 Cal.4th 616, 667, 128 Cal. Rptr.2d 104, 59 P.3d 174; *see* Cal.Code regs., tit. 15, § 2402.) [¶] The Governor concluded petitioner is unsuitable for parole because the circumstances of the commitment offense were beyond the minimum necessary to sustain a conviction for second-degree murder, the motive was "exceedingly trivial," and petitioner's conduct after the murders "demonstrated an exceptional callousness and a complete lack of remorse or conscience." [¶] Petitioner is serving fifteen years to life for murder in the second-degree. The record reflects that just after midnight on September 19, 1981, petitioner, who was a gang member, along with fellow gang members Perez and Marmol, became involved in a conflict with three men over a car owned by one of the men. Petitioner and his

crime partners left but then returned. When they returned, Perez had a sawed-off rifle and petitioner had a shotgun. Perez and Marmol demanded money from one of the men and he handed over one dollar. Perez and petitioner then began shooting. Two of the men were struck and killed by rifle fire. Petitioner, Perez, and Marmol then fled the scene. Petitioner told the Board the three of them had felt "disrespected." Later on the night of September 19, petitioner, Perez, and Marmol, approached another victim, Ruben Rivas, and demanded beer. The three then took beer from Rivas and a fight ensued. Petitioner beat Rivas with his fists and a beer bottle before the three left the scene. Perez returned some time late with a rifle and shot Rivas twice in the back of each leg. Rivas survived all his injuries. [¶] The Governor may rely on the commitment offense alone to deny parole if the circumstances of it are more than the minimum necessary to sustain a conviction for second-degree murder. (*Rosenkrantz, supra,* 29 Cal.4th 616, 683, 128 Cal.Rptr.2d 104, 59 P.3d 174.) Petitioner participated in the premeditated murder of two victims. He could well have been convicted of first-degree murder. As such, the Governor can deny petitioner parole based on the commitment offense alone. Moreover, an inmate may be unsuitable for parole if the motive for the offense was "very trivial." (Cal.Code Regs., tit. 15, § 2402(c)(1)(E).) While the Governor described the life offense as an "armed robbery," by petitioner's own admission the murders were precipitated by the attackers' feeling that they had been "disrespected" by the victims. Thus, there is "some evidence" the motive was "very trivial." [¶] The Governor may also consider petitioner's "behavior before, during and after the crime" in assessing suitability for parole.

(Cal.Code Regs., tit. 15, § 2402(b).) Here petitioner and his crime partners attacked yet another victim on the same day of the life offense, demanding beer from him. They then took the beer from him and petitioner beat him with his fists and a beer bottle. That violent behavior, committed after the murders of the first two victims, is "some evidence" he is unsuitable for parole. It demonstrates a lack of conscience and an utter disregard for the value of human life. [¶] The Court rejects petitioner's argument that the Governor's denial of parole violates petitioner's plea agreement. His argument rests on the premise that at the time of his plea agreement, Penal Code § 3041.2, allowing the Governor to reverse a finding of suitability by the Board, had not yet been enacted. However, petitioner agreed to an indeterminate sentence with a maximum of *life*. In addition, the California Supreme Court has already ruled that the Governor's power of reversal is not an *ex post facto* violation. (*Rosenkrantz, supra,* 29 Cal.4th 616, 637–652, 128 Cal. Rptr.2d 104, 59 P.3d 174.) Just as the Governor is not barred from considering facts a jury did not find beyond a reasonable doubt, he is not precluded from considering such evidence in exercising his discretion to reverse a Board decision granting parole. (*See id.* at 679, 128 Cal.Rptr.2d 104, 59 P.3d 174.) As such, petitioner should expect to serve the maximum term unless and until the Board and Governor agree he is suitable for parole. (*See In re Dannenberg* (2005) 34 Cal.4th 1061, 1097–1098, 23 Cal.Rptr.3d 417, 104 P.3d 783.) [¶] Accordingly, the petition is denied.

Lodgment no. 6. On October 17, 2005, petitioner filed a habeas application in the California Court of Appeal, which denied the petition on October 20, 2005. Lodgment nos. 7–8. Finally, on December 27,

2005, petitioner filed a habeas corpus application in the California Supreme Court, which denied the petition on September 20, 2006. Lodgment nos. 9–10.

## III

On November 7, 2006, petitioner filed the pending habeas corpus petition under 28 U.S.C. § 2254, challenging the Governor's reversal of his grant of parole, and on February 17, 2007, respondent filed his answer. On March 8, 2007, petitioner filed his traverse, and on April 18, 2008, petitioner filed a supplement to his traverse.

The petitioner raises the following claims in the pending habeas corpus petition:

Ground One—The Governor's reversal of the Board's grant of parole "is inapposite to the record and supported by no evidence"; thus, abrogating petitioner's "due process [rights] and ... liberty interest in parole";

Ground Two—The Governor's reversal of the Board's grant of parole violated petitioner's plea bargain "because at the time petitioner entered into his plea bargain with the state only the [Board] had final authority for parole";

Ground Three—The Governor's re-characterization of petitioner's commitment offense "violated Petitioner's plea agreement as well his rights under the sixth amendment of the U.S. Constitution";

Ground Four—"Petitioner's Juvenile record is not 'some evidence' for the Governor to reverse the [Board's] decision granting petitioner parole"; and

Ground Five—The Governor's authority to reverse petitioner's parole grant is unconstitutional and in violation of the ex post facto clause because "petitioner's commitment offense occurred in 1981, seven years prior to Art. V, 8(b) of the Cal. Const."

## DISCUSSION

## IV

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "circumscribes a federal habeas court's review of a state court decision." *Lockyer v. Andrade*, 538 U.S. 63, 70, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003); *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527, 2534, 156 L.Ed.2d 471 (2003). As amended by AEDPA, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—[¶] (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or [¶] (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Further, under AEDPA, a federal court shall presume a state court's determination of factual issues is correct, and petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

■ "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152

L.Ed.2d 914 (2002). "Avoiding these pitfalls does not require citation of [Supreme Court] cases—indeed, it does not require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (per curiam) (emphasis in original).

■■■ "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the [petitioner's] case." *Williams*, 529 U.S. at 413, 120 S.Ct. at 1523; *Andrade*, 538 U.S. at 75, 123 S.Ct. at 1174. "An *'unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Woodford v. Visciotti*, 537 U.S. 19, 25, 123 S.Ct. 357, 360, 154 L.Ed.2d 279 (2002) (per curiam) (citations omitted; emphasis in original); *Bell*, 535 U.S. at 694, 122 S.Ct. at 1850. Thus, "even if [this Court] concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." *Penry v. Johnson*, 532 U.S. 782, 792–93, 121 S.Ct. 1910, 1918, 150 L.Ed.2d 9 (2001); *Wiggins*, 539 U.S. at 520–21, 123 S.Ct. at 2535.

■■ "Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Andrade*, 538 U.S. at 71, 123 S.Ct. at 1172 (quoting *Williams*, 529 U.S. at 412, 120 S.Ct. at 1523). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Andrade*, 538 U.S. at 71–72, 123 S.Ct. at 1172; *Yarborough v. Alvarado*, 541 U.S. 652, 660–61, 124 S.Ct. 2140, 2147, 158 L.Ed.2d 938 (2004). "Although the statutory formulation restricts federal law to Supreme Court precedent, . . . 'Ninth Circuit precedent may be persuasive authority for purposes of determining whether a particular state court decision is an unreasonable application of Supreme Court law, and may also help us determine what law is clearly established.'" *Sims v. Rowland*, 414 F.3d 1148, 1151 (9th Cir.), *cert. denied*, 546 U.S. 1066, 126 S.Ct. 809, 163 L.Ed.2d 637 (2005); *Robinson v. Ignacio*, 360 F.3d 1044, 1057 (9th Cir.2004).

The California Supreme Court reached the merits of petitioner's claim when it denied his habeas corpus petition without comment or citation to authority. *Gaston v. Palmer*, 417 F.3d 1030, 1038 (9th Cir. 2005), *amended by*, 447 F.3d 1165 (9th Cir.2006), *cert. denied*, 549 U.S. 1134, 127 S.Ct. 979, 166 L.Ed.2d 742 (2007); *Hunter v. Aispuro*, 982 F.2d 344, 348 (9th Cir. 1992), *cert. denied*, 510 U.S. 887, 114 S.Ct. 240, 126 L.Ed.2d 194 (1993). "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991); *Medley v. Runnels*, 506 F.3d 857, 862 (9th Cir.2007) (en banc), *cert. denied*, 552 U.S. 1316, 128 S.Ct. 1878, 170 L.Ed.2d 754 (2008). Thus, in addressing petitioner's claims, this Court will consider the reasoning of the Los Angeles County Superior Court, which denied the claims on the merits. *Stenson v. Lambert*, 504 F.3d 873, 884 (9th Cir.2007), *cert. denied*, — U.S. ——, 129 S.Ct. 247, 172 L.Ed.2d 188 (2008); *Bonner v. Carey*, 425 F.3d 1145, 1148 n. 13 (9th Cir.2005), *amended by*, 439 F.3d 993 (9th Cir.), *cert. denied*, 549 U.S. 856, 127 S.Ct. 132, 166 L.Ed.2d 97 (2006).

## V

■ "Article III of the Constitution limits federal courts to the adjudication of actual, ongoing controversies between litigants." *Deakins v. Monaghan,* 484 U.S. 193, 199, 108 S.Ct. 523, 528, 98 L.Ed.2d 529 (1988); *Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975); *DeFunis v. Odegaard,* 416 U.S. 312, 316, 94 S.Ct. 1704, 1705, 40 L.Ed.2d 164 (1974) (per curiam). "[F]ederal courts may not 'give opinions upon moot questions or abstract propositions.' " *Calderon v. Moore,* 518 U.S. 149, 150, 116 S.Ct. 2066, 2067, 135 L.Ed.2d 453 (1996) (per curiam) (quoting *Mills v. Green,* 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895)). "This means that, throughout the litigation, the [petitioner] 'must have suffered, or be threatened with, an actual injury traceable to the [respondent] and likely to be redressed by a favorable judicial decision.' " *Spencer v. Kemna,* 523 U.S. 1, 7, 118 S.Ct. 978, 983, 140 L.Ed.2d 43 (1998) (quoting *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477, 110 S.Ct. 1249, 1253, 108 L.Ed.2d 400 (1990)); *see also Murphy v. Hunt,* 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (per curiam) ("In general, a case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." (citations and internal quotation marks omitted)). The burden of demonstrating mootness is a heavy one. *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979); *West v. Secretary of the Dep't of Transp.,* 206 F.3d 920, 924–25 (9th Cir. 2000).

On September 23, 2009, respondent filed a motion to dismiss the pending habeas petition, arguing this action is now moot because petitioner has been paroled. The Court disagrees. First, the Superior Court's order granting petitioner's habeas corpus petition and release on parole is on appeal and not yet final. *See* note 4 above. Second, on September 19, 1981, when petitioner committed second-degree murder, "the maximum period of parole for a person convicted of second degree murder was five years"—not lifetime parole, as it is now.[5] *Thomas v. Yates,* 637 F.Supp.2d 837, 841 (E.D.Cal.2009); *In re Carabes,* 144 Cal.App.3d 927, 930, 193 Cal.Rptr. 65 (1983). Therefore, "[t]he Court finds that the petition is not moot, as Petitioner's parole term is determinate and not subject to the lifetime parole requirement set forth in California Penal Code section 3000.1. The Court may afford Petitioner a remedy, despite his release from prison, by issuing an order directing the [California Department of Corrections and Rehabilitation] to credit time served in prison in violation of Petitioner's constitutional rights towards Petitioner's determinate period of parole supervision."[6] *Thomas,* 637 F.Supp.2d at 841 (citations omitted); *McQuillion v. Duncan,* 342 F.3d 1012, 1015 (9th Cir.2003) ("*McQuillion II* "); *Stephenson v. Martell,* 2009 WL 2824738, *2 (E.D.Cal.). Accordingly, respondent has not met his heavy burden of demonstrating the pending habeas petition is moot, and respondent's motion to dismiss is denied.

## VI

■ The Fourteenth Amendment's due process clause provides that a person may not be deprived of life, liberty, or property without due process of law. The Supreme Court "examine[s] procedural

---

5. P.C. § 3000.1 now "provides that a person convicted of a second degree murder that occurred after January 1, 1983 is subject to lifetime parole...." *In re Chaudhary,* 172 Cal. App.4th 32, 34, 90 Cal.Rptr.3d 678 (2009); P.C. § 3000.1.

6. This remedy for petitioner is discussed in Part VII below.

due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State, ...; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989) (citations omitted); *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1127 (9th Cir.2006). "Under the 'clearly established' framework of *Greenholtz* [7] and *Allen*,[8] ... California's parole scheme gives rise to a cognizable liberty interest in release on parole." *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir.2002) (footnotes added); *Sass*, 461 F.3d at 1127–28; *see also Irons v. Carey*, 505 F.3d 846, 850 (9th Cir.2007) ("California Penal Code section 3041[9] vests [petitioner] and all other California prisoners whose sentences provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause." (footnote added)).

The Board's decision "with respect to the granting, denial, revocation, or suspension of parole of a person sentenced to an indeterminate term upon conviction of murder" shall not become final for 30 days, during which time California's Governor may review it.[10] Cal. Const. Art. V, § 8(b). However, California law "does not grant a Governor unfettered discretion over parole matters, but rather explicitly requires his or her parole decision to be based upon the same factors that the Board is required to consider." *In re Rosenkrantz*, 29 Cal.4th 616, 625–26, 128 Cal.Rptr.2d 104, 115, 59 P.3d 174 (2002), *cert. denied*, 538 U.S. 980, 123 S.Ct. 1808, 155 L.Ed.2d 669 (2003); *In re Lawrence*, 44 Cal.4th 1181, 1204, 82 Cal.Rptr.3d 169, 183, 190 P.3d 535 (2008); P.C. § 3041.2(a); *see also* Cal. Const. Art. V, § 8(b) ("The Governor may only affirm, modify, or reverse the [Board's] decision ... on the basis of the same factors which the [Board] is required to consider."). If, as here, the Governor decides to reverse the Board's parole decision, he must provide a written decision specifying his reasons. P.C. § 3041.2(b).

The Governor's decision to deny parole satisfies due process only if "some evidence supports the decision[,]" *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985), or the decision is not "otherwise arbitrary." *Irons*, 505 F.3d at 851 (citations omitted); *Hill*, 472 U.S. at 457, 105 S.Ct. at 2775. When this Court assesses whether a parole decision is "sup-

---

**7.** *Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979).

**8.** *Board of Pardons v. Allen*, 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987).

**9.** At the time of petitioner's parole hearing, California's parole scheme provided that the Board:

shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting.

P.C. § 3041(b) (2004).

**10.** "[T]he Governor's authority to review a parole decision commences on the effective date of the [Board's] decision." *In re Arafiles*, 6 Cal.App.4th 1467, 1474, 8 Cal.Rptr.2d 492 (1992); *see also In re Tokhmanian*, 168 Cal. App.4th 1270, 1273, 86 Cal.Rptr.3d 250 (2008) ("As the panel's decision granting parole is not effective for 120 days to allow the board time to act, the Governor's 30–day period does not begin until *after* that time." (emphasis in original)).

ported by some evidence in a habeas case, our analysis is framed by the statutes and regulations governing parole suitability determinations in [California]." *Irons*, 505 F.3d at 851; *Biggs v. Terhune*, 334 F.3d 910, 915 (9th Cir.2003). Thus, this Court "must look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by 'some evidence' in [petitioner's] case constituted an unreasonable application of the 'some evidence' principle articulated in *Hill* [.]" *Irons*, 505 F.3d at 851.

▬▬▬ Under California law, an inmate " 'shall be found unsuitable for parole and denied parole if, in the judgment of the [Board or Governor], the prisoner will pose an unreasonable risk of danger to society if released from prison.' " *Id.* (citations and footnote omitted). Factors the Board or Governor should consider include the inmate's:

> social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the

base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the [inmate] may safely be released to the community; and any other information which bears on the prisoner's suitability for release.

15 California Code of Regulations ("C.C.R.") § 2402(b-d).[11] However, the overarching consideration in parole suitability decisions is public safety. *Irons*, 505 F.3d at 851; *see also Lawrence*, 44 Cal.4th at 1212, 82 Cal.Rptr.3d at 190, 190 P.3d 535 ("[T]he relevant inquiry is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely some evidence confirms the existence of certain factual findings.");[12] *In re Shaputis*, 44 Cal.4th 1241, 1254, 82 Cal.Rptr.3d 213, 222–23, 190 P.3d 573 (2008) ("[T]he proper articulation of the standard of review is whether there exists 'some evidence' that an inmate poses a current threat to public safety, rather

**11.** Circumstances tending to establish unsuitability for parole are that the inmate:

> (1) committed the offense in an especially heinous, atrocious or cruel manner; (2) possesses a previous record of violence; (3) has an unstable social history; (4) previously has sexually assaulted another individual in a sadistic manner; (5) has a lengthy history of severe mental problems related to the offense; and (6) has engaged in serious misconduct while in prison.

*Rosenkrantz*, 29 Cal.4th at 653–54, 128 Cal. Rptr.2d at 137, 59 P.3d 174 (footnote omitted); 15 C.C.R. § 2402(c). On the other hand, circumstances tending to establish suitability for parole are that the inmate:
> (1) does not possess a record of violent crime committed while a juvenile; (2) has a stable social history; (3) has shown signs of remorse; (4) committed the crime as the

result of significant stress in his life, especially if the stress has built over a long period of time; (5) committed the criminal offense as a result of battered woman syndrome; (6) lacks any significant history of violent crime; (7) is of an age that reduces the probability of recidivism; (8) has made realistic plans for release or has developed marketable skills that can be put to use upon release; and (9) has engaged in institutional activities that indicate an enhanced ability to function within the law upon release.

*Rosenkrantz*, 29 Cal.4th at 654, 128 Cal. Rptr.2d at 138, 59 P.3d 174; 15 C.C.R. § 2402(d).

**12.** "[U]nder *Irons*, *Lawrence* governs the application of the 'some evidence' standard." *Milot v. Haws*, 628 F.Supp.2d 1152, 1155 (C.D.Cal.2009).

than merely some evidence of the existence of a statutory unsuitability factor.").

In Grounds One and Four, petitioner claims the Governor's reversal of the Board's grant of parole is not supported by some evidence in violation of due process. As set forth above, the Los Angeles County Superior Court disagreed, finding " 'some evidence' to support the Governor's finding that petitioner is unsuitable for parole" because "[t]he Governor may rely on the commitment offense alone to deny parole if the circumstances of it are more than the minimum necessary to sustain a conviction for second-degree murder." Lodgment no. 6.

■■■■ Here, as the Superior Court found, the Governor reversed the Board's decision to grant petitioner parole based solely on the facts and circumstances surrounding the commitment offense,[13] concluding "petitioner is unsuitable for parole because the circumstances of the commitment offense were beyond the minimum necessary to sustain a conviction for second-degree murder, the motive was 'exceedingly trivial,' and petitioner's conduct after the murders 'demonstrated an exceptional callousness and a complete lack of remorse or conscience.' " Lodgment no. 6 (quoting Lodgment no. 4); see also Lodgment no. 4 ("The magnitude alone of [petitioner's] murderous conduct is a sufficient basis for me to conclude that his release from prison at this time would pose an unreasonable public-safety risk."). Of course, that the circumstances of the commitment offense went beyond the bare minimum necessary to support a second-degree murder conviction does not, in and of itself, provide "some evidence" to support the Governor's decision since "there are few, if any, murders that could *not* be characterized as either particularly aggravated, or as involving some act beyond the minimum required for conviction of the offense." [14] *Lawrence,* 44 Cal.4th at 1218, 82 Cal.Rptr.3d at 196, 190 P.3d 535 (emphasis in original); *In re Rozzo,* 172 Cal. App.4th 40, 53, 91 Cal.Rptr.3d 85 (2009). Rather, "the circumstances of the commitment offense (or any other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prisoner remains a danger to the public." *Lawrence,* 44 Cal.4th at 1212, 82 Cal.Rptr.3d at 190, 190 P.3d 535; *In re Rico,* 171 Cal. App.4th 659, 673, 89 Cal.Rptr.3d 866 (2009); *Milot,* 628 F.Supp.2d at 1167; *see also Irons,* 505 F.3d at 851–52 ("A prisoner's commitment offense may constitute a circumstance tending to show that a prisoner is presently too dangerous to be found suitable for parole, but the denial of parole may be predicated on a prisoner's commitment offense only where the [Governor] can 'point to factors beyond the minimum elements of the crime for which the inmate was committed' that demonstrate the inmate will, at the time of the suitability hearing, present a danger to society if released." (quoting *In re Dannenberg,* 34 Cal.4th 1061, 23 Cal.Rptr.3d 417, 104 P.3d 783 (2005), *cert. denied,* 546 U.S. 844, 126 S.Ct. 92, 163 L.Ed.2d 109 (2005))). "But the statutory and regulato-

---

**13.** Although the Governor briefly discussed petitioner's juvenile history and his disciplinary problems when initially incarcerated, he did not rely on these grounds as reasons to support his decision. Lodgment no. 4. To the contrary, the Governor opined petitioner "seemed to turn a corner during the mid–1980s [and] ... he has been gang-free since his debriefing in the mid–1980s and has remained discipline-free since 1986[,]" which

"are ... factors supportive of [petitioner's] release from prison on parole." *Id.*

**14.** Similarly, "[b]ecause any motive for robbery would seem trivial compared to its potentially deadly consequences, individualized review ... is particularly important." *Ledesma v. Marshall,* 658 F.Supp.2d 1155, 1183–84 (E.D.Cal.2009).

ry mandate to normally grant parole to life prisoners who have committed murder means that, particularly after these prisoners have served their suggested base terms, the underlying circumstances of the commitment offense alone rarely will provide a valid basis for denying parole when there is strong evidence of rehabilitation and no other evidence of current dangerousness." *Lawrence,* 44 Cal.4th at 1211, 82 Cal.Rptr.3d at 190, 190 P.3d 535; *In re Burdan,* 169 Cal.App.4th 18, 38, 86 Cal. Rptr.3d 549 (2008). In other words,

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of *current* dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

*Lawrence,* 44 Cal.4th at 1214, 82 Cal. Rptr.3d at 192, 190 P.3d 535 (emphasis in original); *Ledesma,* 658 F.Supp.2d at 1182–83.

Here, "[t]he Governor has conceded [petitioner's] rehabilitative gains, and has not attempted to articulate a rational nexus between [petitioner's] commitment offense and his current dangerousness." *In re Dannenberg,* 173 Cal.App.4th 237, 255, 92 Cal.Rptr.3d 647 (2009). More specifically, the Governor recognized that in the 20 years between petitioner's conviction and his 2004 parole hearing, petitioner took significant steps to rehabilitate himself and enhance his suitability for parole, including: obtaining a GED; taking FEMA classes; receiving vocational training in upholstery, office services, and dry cleaning; holding several skilled institutional jobs, including recreation coordinator for mentally-ill inmates; participating in numerous self-help and therapy programs, such as various substance abuse programs since 1989, personal growth seminars, Criminal and Gang Members Anonymous, Process Group, Lifer Prisoner's Support Group, Alternatives to Violence, Stress Intervention Peer Program, Anger Management, Criminon, and IM-PACT; involvement in the hospice-care program; volunteering as an HIV Peer Educator and a literacy tutor; maintained relationships while in prison; receiving commendations from various prison staff; receiving positive Life Prisoner and mental-health evaluations; and making realistic parole plans, including confirmed offers of housing and employment. *See* Lodgment no. 4. Yet, the Governor cites nothing beyond the circumstances of petitioner's commitment offense to support petitioner's dangerousness in 2004. *Id.*

The petitioner's commitment offense is not "some evidence" supporting the Governor's decision to deny petitioner parole. To the contrary, "indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes." *Irons,* 505 F.3d at 854. Petitioner has reached that point.[15]

---

**15.** As the Ninth Circuit has stated:

> [I]n all the cases in which we have held that a parole board's decision to deem a prisoner unsuitable for parole solely on the basis of his commitment offense comports with due process, the decision was made before the inmate had served the minimum number of years required by his sentence. Specifically, in *Biggs, Sass,* and here, the petitioners had not served the minimum number of years to which they had been sentenced at the time of the challenged

Since "the Governor has neither disputed the petitioner's rehabilitative gains nor, importantly, related the commitment offense to current circumstances or suggested that any further rehabilitation might change the ultimate decision that petitioner remains a danger, mere recitation of the circumstances of the commitment offense, absent articulation of a rational nexus between those facts and current dangerousness, fails to provide the required 'modicum of evidence' of unsuitability." *Lawrence*, 44 Cal.4th at 1226–27, 82 Cal.Rptr.3d at 203, 190 P.3d 535. In other words, the determination of petitioner's current dangerousness "cannot be undertaken simply by examining the circumstances of the crime in isolation, without consideration of the passage of time or the attendant changes in the inmate's psychological or mental attitude." *Lawrence*, 44 Cal.4th at 1221, 82 Cal.Rptr.3d at 198, 190 P.3d 535; *In re Lazor*, 172 Cal. App.4th 1185, 1197, 92 Cal.Rptr.3d 36 (2009); *Ledesma*, 658 F.Supp.2d at 1182. As such, "petitioner's due process ... rights were violated by the Governor's reliance upon the immutable and unchangeable circumstances of [petitioner's] commitment offense in reversing the Board's decision to grant parole" and "the Governor's decision is not supported by 'some evidence' of current dangerousness and is properly set aside by this [C]ourt." *Lawrence*, 44 Cal.4th at 1227, 82 Cal.Rptr.3d at 203, 190 P.3d 535; *Dannenberg*, 173

Cal.App.4th at 255, 92 Cal.Rptr.3d 647; *see also Thomas v. Brown*, 513 F.Supp.2d 1124, 1136 (N.D.Cal.2006) ("In light of the extensive evidence of [petitioner's] in-prison rehabilitation and exemplary behavior, the reliance on the unchanging factor of the murder to deny [petitioner] parole for the tenth time and 20 years into his 17–to–life sentence violated his right to due process."); *McCullough v. Kane*, 2007 WL 1593227, *9 (N.D.Cal.) ("In light of the extensive evidence of [petitioner's] in-prison rehabilitation and exemplary behavior, the reliance on the unchanging facts of the murder and his juvenile criminality to deny him parole 21 years into his 15–to–life sentence violated his right to due process. The some evidence standard provides more protection than against fabricated charges or bureaucratic mistakes— the some evidence standard also protects against arbitrary decisions. The Governor's decision was arbitrary and therefore did not comport with the some evidence standard." (citation omitted)). For these reasons, this Court finds the California Supreme Court's decision denying petitioner's challenge to the Governor's reversal of the 2004 grant of parole to him was an unreasonable application of clearly established federal law, and petitioner " 'is therefore entitled to the release date ordered by the Board.' "[16] *McCarns v. Dexter*, 534 F.Supp.2d 1138, 1154–55 (C.D.Cal.2008) (citations omitted).

---

parole denial by the Board. All we held in those cases and all we hold today, therefore, is that, given the particular circumstances of the offenses in these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms.

*Irons*, 505 F.3d at 853–54; *see also Brown v. Kane*, 2007 WL 1288448, *4 (N.D.Cal.) (*"Irons [v. Carey, 479 F.3d 658 (9th Cir.2007)]* limited the holdings of *Biggs, Sass*, and itself to inmates deemed unsuitable prior to the

expiration of their minimum sentences and held the door open for inmates deemed unsuitable after the expiration of their minimum sentences."). Since petitioner had served well beyond his minimum sentence at the time of the Governor's decision, the Ninth Circuit decisions in *Irons, Sass*, and *Biggs* do not compel a different conclusion.

16. In light of this determination, the Court does not address petitioner's other claims, which would not entitle him to greater relief than granted herein.

## VII

"[H]abeas corpus is, at its core, an equitable remedy." *Schlup v. Delo,* 513 U.S. 298, 319, 115 S.Ct. 851, 863, 130 L.Ed.2d 808 (1995); *see also Hilton v. Braunskill,* 481 U.S. 770, 775, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987) (Federal habeas courts have "broad discretion in conditioning a judgment granting habeas relief ... [and] are authorized ... to dispose of habeas corpus matters 'as law and justice require.'" (citation omitted)); *Jones v. Cunningham,* 371 U.S. 236, 243, 83 S.Ct. 373, 377, 9 L.Ed.2d 285 (1963) (habeas corpus "is not now and never has been a static, narrow, formalistic remedy"). Therefore, "federal courts have a fair amount of flexibility in fashioning specific habeas relief." *Burnett v. Lampert,* 432 F.3d 996, 999 (9th Cir.2005); *see also Sanders v. Ratelle,* 21 F.3d 1446, 1461 (9th Cir.1994) ("A federal court is vested with the largest power to control and direct the form of judgment to be entered in cases brought up before it on habeas corpus. The court is free to fashion the remedy as law and justice require and is not required to order petitioner's immediate release from physical custody." (citations and internal punctuation omitted)).

At the time of the Board's decision in 2004, petitioner had served more than 20 years in prison, and had served well beyond his minimum sentence of 144 months. Lodgment nos. 3–4. If petitioner had been released on parole in 2004, his five year term of parole would have expired in 2009. As such, petitioner does not merely seek release on parole, but rather seeks an order requiring respondent to release him forthwith from all custody, including parole. *See* Memorandum in Support of Habeas Corpus Petition at 24. Petitioner is entitled to receive credit against his parole term for the time he was incarcerated beyond his 2004 release parole date. In *McQuillion II,* the Ninth Circuit aptly stated:

The Warden argues that, at a minimum, McQuillion should not be released immediately without an accompanying three-year period of parole. This argument overlooks the fact that if McQuillion had been released on the date to which he was entitled, he would have been released in May 1994. The three-year parole, which he would have been required to serve if he had been released on time, has long since passed.

*McQuillion,* 342 F.3d at 1015; *see also Burnett,* 432 F.3d at 1000 (noting had Ninth Circuit in *McQuillion II* not ordered the petitioner's immediate release, it would have been "essentially *lengthening*" his sentence by ordering him to serve a parole term where he already had served more time in prison than his "lawful period of imprisonment and parole combined"); *Stephenson,* 2009 WL 2824738, *2 ("[W]here a petitioner has subsequently been released to a determinate period of parole supervision, federal courts have concluded that the petitioner, should he prevail, may still obtain an order directing California authorities to credit him with the time served in prison in violation of his constitutional rights towards his determinate period of parole supervision."); *Tripp v. Cate,* 2009 WL 248368, *12 (N.D.Cal.) (ordering Department of Corrections to calculate parole term based on 2004 suitability finding notwithstanding the petitioner's release on parole in 2008); *Carlin v. Wong,* 2008 WL 3183163, *2 (N.D.Cal.) ("Here, petitioner is entitled to credit against his parole period for his time in confinement that was in violation of his due process rights. Had respondent not violated petitioner's due process rights by denying parole on December 15, 2003, petitioner would have been released when the parole suitability determination became final after the 150 day review period. Petitioner's parole decision would have become final on May 14, 2004. Accordingly, the

Court finds that the time petitioner has been incarcerated beyond May 14, 2004 should be credited toward his post-release parole period." (citation omitted)); *Mendoza v. Hernandez,* 2008 WL 2018191, *1–2 (S.D.Cal.) ("Here, the Court granted Mendoza's petition fully intending to provide for his immediate release from custody and to grant him credit for time served beyond the date of the Board's decision."); *cf. In re Chaudhary,* 172 Cal.App.4th at 38, 90 Cal.Rptr.3d 678 (distinguishing *McQuillion II* and noting the petitioner, who had committed his offense after January 1, 1983, was subject to lifetime parole under P.C. § 3000.1).

## RECOMMENDATION

IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) adopting the Report and Recommendation as the findings of fact and conclusions of law herein; (3) determining petitioner was denied due process of law when the Governor reversed the Board's 2004 grant of parole to him without "some evidence" in the record; (4) determining the California Supreme Court's decision determining the Governor's reversal of petitioner's 2004 grant of parole did not deny petitioner due process of law was an unreasonable application of clearly established federal law, and Judgment shall be entered granting the petition for writ of habeas corpus; and (5) reinstating the Board's 2004 grant of parole to petitioner on the terms and conditions set by the Board, requiring the California Department of Corrections and Rehabilitation to credit the time petitioner was incarcerated beyond his 2004 release date towards petitioner's parole period, and entering Judgment accordingly.

DATE: October 28, 2009

## ORDER DENYING RESPONDENT'S MOTION FOR RECONSIDERATION

On May 11, 2010, Judgment was entered granting petitioner's habeas corpus petition, reinstating the 2004 parole release date set by the California Board of Prison Terms, and ordering the California Department of Corrections and Rehabilitation ("CDCR") to credit the time petitioner was incarcerated beyond his 2004 parole release date towards petitioner's parole period. *Martinez v. Marshall,* 713 F.Supp.2d 992, 2010 WL 1877550 (C.D.Cal.). On June 8, 2010, respondent filed a motion to reconsider the Judgment under Federal Rules of Civil Procedure 59(e),[1] arguing "there has been an intervening change in controlling law," citing *Hayward v. Marshall,* 603 F.3d 546 (9th Cir.2010) (en banc), and further arguing "there is no federal due process right to a parole decision supported by some evidence and Petitioner received state procedures adequate to vindicate his interests." For the reasons set forth below, respondent's motion for reconsideration is without merit and is summarily denied.

## DISCUSSION

"Under Rule 59(e), it is appropriate to alter or amend a judgment if '(1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law.'" *United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.,* 555 F.3d 772, 780 (9th Cir.2009) (citation omitted); *In re Syncor ERISA Litigation,* 516 F.3d 1095, 1100 (9th Cir.2008). However, "Rule 59(e) ... 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior

---

1. Rule 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed.R.Civ.P. 59(e).

to the entry of judgment.'" *Exxon Shipping Co. v. Baker*, —— U.S. ——, 128 S.Ct. 2605, 2617 n. 5, 171 L.Ed.2d 570 (2008) (citation omitted); *see also Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir.2003) ("A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.").

▇▇▇ Initially, it is difficult to see how *Hayward* is an intervening change in controlling law, since *Hayward* was decided **before** Judgment was entered in this case. *See Baker v. Russell Corp.*, 372 Fed.Appx. 917, 2010 WL 1434404, *4 (11th Cir.(Ala.)) (per curiam) (affirming denial of Rule 59(e) motion in part because cases movant relied on "were decided before judgment was entered against him"). More importantly, the respondent misapprehends *Hayward*, which provides no basis to grant respondent's motion for reconsideration, or to alter or amend the Judgment. In *Hayward*, the Ninth Circuit held "[t]here is no general federal constitutional 'some evidence' requirement for denial of parole, **in the absence of state law creating an enforceable right to parole.**" *Hayward*, 603 F.3d at 559 (emphasis added); *see also Board of Pardons v. Allen*, 482 U.S. 369, 371, 107 S.Ct. 2415, 2417, 96 L.Ed.2d 303 (1987) ("[S]tate statutes may create liberty interests in parole release that are entitled to protection under the Due Process Clause." (citation omitted)); *Hayward*, 603 F.3d at 561 (same). The Ninth Circuit has determined that California has created a liberty interest in parole release, one component of which requires parole decisions be supported by "some evidence . . . that the inmate constitutes a current threat to public safety." *In re Lawrence*, 44 Cal.4th 1181, 1212, 82 Cal.Rptr.3d 169, 190, 190 P.3d 535 (2008); *In re Shaputis*, 44 Cal.4th 1241, 1254, 82 Cal.Rptr.3d 213, 222–23, 190 P.3d 573 (2008); *see also Cooke v. Solis*, 606 F.3d 1206, 1213 (9th Cir.(Cal.)2010) ("California's 'some evidence' requirement

is a component of the liberty interest created by the parole system of that state."); *Pearson v. Muntz*, 606 F.3d 606, 2010 WL 2108964, *4 (9th Cir.(Cal.)) (per curiam) ("Like many liberty interests that are enforceable under the federal Due Process Clause, a California prisoner's right to parole in the absence of 'some evidence' of current dangerousness arises from state law. It is beyond doubt that state statutes, and a *fortiori* state constitutions, 'may create liberty interests in parole release that are entitled to protection under the Due Process Clause.' In California, the 'some evidence' requirement is a component of that liberty interest." (citations omitted)). This Court correctly recognized this due process right as clearly established federal law in *Martinez*. *See Martinez*, 713 F.Supp.2d at 1001–04, 2010 WL 1877550 at *7–8.

▇▇▇ Further, respondent's argument that, under *Hayward*, this Court cannot consider "the state's parole decision or the state's application of its some-evidence standard[,]" but only "the adequacy of California's some-evidence requirement," Memo. at 5:12–23, is without merit. To the contrary, the Ninth Circuit has clearly held that, under *Hayward*, federal habeas courts "must determine 'whether the California judicial decision approving the governor's [or the Board's] decision rejecting parole was an unreasonable application of the California some evidence requirement, or was based on an unreasonable determination of the facts in light of the evidence.'" *Cooke*, 606 F.3d at 1213 (quoting *Hayward*, 603 F.3d at 563; some internal quotation marks omitted); *see also Pearson*, 606 F.3d 606, 610–11 ("It is . . . our obligation, as we held in *Hayward*, to review the merits of a federal habeas petition brought by a California prisoner who asserts that the decision to deny him parole was not supported by 'some evidence'

of his current dangerousness. Under AEDPA, this means that we review 'whether the California judicial decision approving the governor's [or parole board's] decision rejecting parole was an "unreasonable application" of the California "some evidence" requirement, or was "based on an unreasonable determination of the facts in light of the evidence." ' " (citations omitted)). Indeed, the Ninth Circuit has clearly rejected respondent's argument, stating:

> [T]he State's argument is based on a fundamental misunderstanding of the *Hayward* holding[, which] specifically commands federal courts to examine the reasonableness of the state court's application of the California "some evidence" requirement, as well as the reasonableness of the state court's determination of the facts in light of the evidence. That command can only be read as requiring an examination of how the state court applied the requirement. Moreover, after examining the particular state court

decision at issue, *Hayward* concluded that the district court properly denied the writ because "[t]here was some evidence of future dangerousness" justifying the denial of parole, and not merely because the state court purported to identify some evidence of future dangerousness. In short, the *Hayward* court itself performed the function that the State argues it forbade. Indubitably, *Hayward* neither announced nor applied the test now urged by the State.

*Pearson,* 606 F.3d at 610–11;[2] *see also Hayward,* 603 F.3d at 563 ("There was some evidence of future dangerousness, so [petitioner's] parole was denied, and the district court correctly denied the writ.").

Although the *Martinez* Report and Recommendation was filed before *Hayward* was decided, this Court, in accordance with *Hayward,* applied the proper California law to assess petitioner's federal due process rights.[3] *Compare Martinez,* 713 F.Supp.2d at 1002–06, 2010 WL 1877550 at

**2.** Recognizing that *Pearson* clearly rejected his interpretation of *Hayward,* the respondent challenges *Pearson* and its discussion of *Hayward* as "dicta." Memo. at 5–6 n. 1. This challenge to *Pearson* fails for several reasons. First, the Ninth Circuit, "sitting en banc, [has] held that a discussion in a published opinion from this court is binding circuit law 'regardless of whether it was in some technical sense necessary to [the] disposition of the case.' " *United States v. Bond,* 552 F.3d 1092, 1096 (9th Cir.2009) (quoting *Barapind v. Enomoto,* 400 F.3d 744, 750–51 (9th Cir.2005) (en banc); internal quotation marks omitted); *see also in re Tippett,* 542 F.3d 684, 691–92 (9th Cir.2008) (" '[W]here a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit, regardless of whether doing so is necessary in some strict logical sense.' " (citation omitted)). Second, respondent's attack on *Pearson* does not account for *Cooke,* which respondent conveniently ignores—although it was filed before the pending motion for reconsideration. In *Cooke,* the Ninth Circuit applied both *Hay-*

*ward* and Pearson in determining a state inmate was entitled to habeas corpus relief because "the state court decision [finding some evidence supported the Board's decision to deny petitioner parole] was based on an unreasonable determination of the facts in light of the evidence." *Cooke,* 606 F.3d at 1208 (citing *Hayward,* 603 F.3d at 563; internal quotation marks omitted). In short, this Court is not free to ignore relevant Ninth Circuit authority merely because the respondent would prefer it do so.

**3.** Because the Report and Recommendation was filed prior to *Hayward,* it cited *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), as well as several earlier Ninth Circuit decisions—*Irons v. Carey,* 505 F.3d 846 (9th Cir. 2007), *Sass v. Cal. Bd. of Prison Terms,* 461 F.3d 1123 (9th Cir.2006), and *Biggs v. Terhune,* 334 F.3d 910, 915 (9th Cir.2003)—that *Hayward* partially overruled. Importantly, however, *Hayward* "overruled those decisions only 'to the extent [that] they may be read' " to " 'imply that there is a federal constitutional right regardless of whether state law enti-

\*8–10 & n. 12 ("*Lawrence* governs the application of the 'some evidence' standard[,]" and, under *Lawrence* and *Shaputis*, "the overarching consideration in parole suitability decisions is public safety") *with Hayward*, 603 F.3d at 562 ("[T]he California Supreme Court established in two decisions, *In re Lawrence* and *In re Shaputis*, that as a matter of state law, 'some evidence' of future dangerousness is indeed a state sine qua non for denial of parole in California."). Thus, there is simply no basis to grant respondent's motion for reconsideration and it should be denied.

### ORDER

The respondent's motion for reconsideration **IS DENIED.**

tles the prisoner to release[,]' " but *Hayward* "did not … disturb those opinions' holdings with regard to the federally protected liberty interest created by the state laws and rules governing the California parole system." *Pearson*, 606 F.3d at 610–11 n. 3 (citation omitted). Therefore, even now, this Court could properly cite those Ninth Circuit cases for the propositions that California law creates a liberty interest in release on parole and this Court " 'must look to California law' " in determining whether the state court's conclusion that there was "some evidence" supporting the Governor's decision to reverse the Board and deny petitioner Martinez parole was contrary to or an unreasonable application of clearly established federal law. *Martinez*, 713 F.Supp.2d at 1001–06, 2010 WL 1877550 at \*7–10.